# United States Court of Appeals
## For the First Circuit

No. 17-2137

JOSEPH S. HAJDUSEK,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Torruella, Selya, and Kayatta,
Circuit Judges.

David N. Damick, with whom The Law Offices of David N. Damick and Thomas P. Colantuono were on brief, for appellant.
Courtney L. Dixon, Attorney, Appellate Staff, Civil Division, United States Department of Justice, with whom Chad A. Readler, Acting Assistant Attorney General, John Farley, Acting United States Attorney, and Mark B. Stern, Attorney, Appellate Staff, Civil Division, United States Department of Justice, were on brief, for appellee.

July 11, 2018

**KAYATTA**, **Circuit Judge**. Joseph Hajdusek participated in the Marine Corps Delayed Entry Program ("DEP"), a program through which individuals can sign up to join the Marine Corps but delay entry in order to better prepare for basic training. Hajdusek alleges that a superior negligently ordered him to undertake an unreasonable program of physical activity, which ultimately resulted in serious injuries. Left disabled and abandoned by the Corps, he sued the United States under the Federal Tort Claims Act ("FTCA"). The district court concluded that the discretionary function exception to the FTCA barred the suit and dismissed the case. For the following reasons, we must affirm.

## I.

When reviewing a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), we "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). In addition to the pleadings, Hajdusek submitted certain additional materials for the district court to consider in evaluating its own jurisdiction, including his own declaration and various Marine Corps documents. The district court considered those materials without objection from the government, and the government makes no objection to our proceeding similarly here, so

- 2 -

we draw the following facts from the complaint as well as from the additional materials considered by the district court.

In August 2010, Hajdusek signed up for the Marine Corps DEP. The DEP is a program that allows individuals to enlist in the Marine Corps Reserve up to one year prior to enlisting in the regular Marine Corps. Individuals participating in the program are known as "poolees." While enrolled in the program, poolees prepare physically and mentally for their enlistment into the active-duty Marine Corps. The program aims to assist in training and reduce attrition. One important aspect of the pool program is particularly relevant here: Poolees, though affiliated with a Marine recruiting station, are not active-duty Marines and are not entitled to Department of Defense type benefits. As guidance documents from the Marine Corps state, poolees "are not Marines yet."

After participating in the program for several months, Hajdusek met most of his weight and strength goals, and was preparing to ship to basic training upon passing a pull-up test. Prior to this final stage, he went skiing with his family, a trip approved by one of the Marines supervising the program. During this trip, Hajdusek received a phone call from Staff Sergeant Mikelo, the newly installed manager of his recruiting station, asking why he had not shown up for a pool event. Dissatisfied with Hajdusek's answer, Mikelo ordered him to appear for a physical

- 3 -

training session on March 1. Hajdusek did as he was told. When he arrived for the training session, Mikelo put him through a workout that Hajdusek describes in a declaration as "much longer and much more strenuous than any other workout I had ever been given." During this workout, he did more repetitions than normal of lunges, pull-ups, push-ups, crunches, and air squats, was given only two twenty-second water breaks over a two-hour period, and was made to exercise for at least thirty minutes longer than normal. Near the end of the session he showed signs of overexertion, collapsing several times but nonetheless able to leave under his own power.

After spending the ensuing several days essentially bedridden due to pain, Hajdusek began to experience blurred vision and nausea. He was diagnosed with various ailments, including rhabdomyolysis, a condition caused when muscle tissue dies from extreme overuse and the dead tissue enters the bloodstream. This has left him permanently disabled.

Hajdusek sued the United States in the District of New Hampshire, alleging that Mikelo's actions had caused his physical injuries and disabilities, that these actions were negligent, and that pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), he was entitled to damages. The United States moved to dismiss on the ground that Hajdusek's claim stemmed from "the performance of a discretionary function," and since the United

States has not waived sovereign immunity for such claims, the district court lacked subject matter jurisdiction. The district court agreed with the government and dismissed the case. This appeal followed.

## II.

The FTCA serves as a limited waiver of sovereign immunity and provides that federal courts:

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Central to this appeal is an exception to this provision, removing from the district courts' jurisdiction "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. § 2680(a). In evaluating a claim under the FTCA, a court must therefore determine whether the claim is based on a discretionary function as contemplated by section 2680; if so, the case must be dismissed for want of jurisdiction. We review such dismissals de novo.

*Evans* v. *United States*, 876 F.3d 375, 381 (1st Cir. 2017), petition for cert. filed, (U.S. May 4, 2018) (No. 17-1516).

In conducting the discretionary function inquiry, we use a "familiar analytic framework." *Shansky* v. *United States*, 164 F.3d 688, 690 (1st Cir. 1999). First, we "must identify the conduct that allegedly caused the harm." *Id.* at 690-91. Second, we must ask "whether this conduct is of the nature and quality that Congress, in crafting the discretionary function exception, sought to shelter from tort liability." *Id.* at 691. The latter analysis "encompasses two questions: Is the conduct itself discretionary? If so, is the discretion susceptible to policy-related judgments?" *Id.* The word "susceptible" is critical here; we do not ask whether the alleged federal tortfeasor was in fact motivated by a policy concern, but only whether the decision in question was of the type that policy analysis could inform. *See* *United States* v. *Gaubert*, 499 U.S. 315, 325 (1991) ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). In addition, the fact that a government official exercises discretion pursuant to regulatory authority creates a presumption that this discretion was susceptible to policy analysis and thus protected. *Id.* at 324.

Here, the parties are in agreement that the conduct that allegedly caused the harm was Mikelo's decision to subject Hajdusek to the especially arduous workout on the day in question. We therefore turn to the analysis of whether that decision was in fact discretionary, and whether the discretion involved was susceptible to policy analysis.

We have little trouble answering the first question in the affirmative. Guidance from the Marine Corps gives Marines in charge of the DEP only general instructions concerning how physical training programs should run. For example, Marines are instructed that they should concentrate training activities on "upper body strength," "abdominal strength," and "aerobic training," and the guidance suggests running and hikes, among other things, as activities that work toward these goals. The Marine Corps does not dictate such details as how often physical training should occur, of what exercises it should consist, how long it should last, and how intense it should be. These decisions are left to the judgment of the individual Marines in charge of administering the DEP. In short, Mikelo exercised discretion in his choice of an exercise regimen for Hajdusek.

That brings us to the second, and in this matter, more complicated, phase of the analysis: We must decide whether the discretion Mikelo exercised was susceptible to policy analysis. As we have previously recognized, answering this question requires

a case-by-case approach, which has, admittedly, "led to some disarray." Shansky, 164 F.3d at 693 (comparing a variety of FTCA discretionary function cases and noting divergent results). Both Hajdusek and the government proffer case law ostensibly supporting their respective points of view, often relying on the same cases. For example, both parties rely on Shansky. In that case, we noted that there was a distinction between "a professional assessment undertaken pursuant to a policy of settled priorities," which is not shielded by the discretionary function exception, and "a fully discretionary judgment that balances incommensurable values in order to establish those priorities," which is. Id. at 694. We held that the National Park Service's decision not to place a handrail and warning signs at a particular facility was shielded by the discretionary function exception, because it required a balancing of safety and aesthetic considerations. Id. at 693. We also noted, however, that "[w]e do not suggest that any conceivable policy justification will suffice to prime the discretionary function pump." Id. at 692-93.

Hajdusek invokes Shansky in arguing that Mikelo's decision was nothing more than a professional judgment done negligently. In his view, the Marine Corps itself settled all policy priorities, and Mikelo's actions were mere implementation. He contends that "no policy was served or implicated in ruining a potential recruit, let alone disciplining someone who policy

- 8 -

declared was not to be subjected to military-type discipline." By contrast, the government argues that Mikelo's decision was informed by the need to balance a variety of policy priorities, such as preparing poolees for the daunting mental and physical challenges of basic training, preventing attrition, and using existing poolees to generate new recruits. In the government's view, this decision is analogous to the ones at issue in Fothergill v. United States, 566 F.3d 248 (1st Cir. 2009). There, we held that decisions "about which reasonable persons can differ" and which are "informed by a need to balance concerns about a myriad of [policy] factors" are protected by the discretionary function exception. Id. at 253.

As Shansky makes clear, deciding whether a government agent's action is susceptible to policy analysis is often challenging, and this case is no exception. However, based upon the record as a whole, we conclude that the government has the better of the argument. Determining just how hard a potential Marine should exercise, and whether, for example, he should do so for 120 or 90 minutes, calls for weighing the policy goals that are furthered by strenuous, even exhaustive exercise against the goals of avoiding attrition through injury or otherwise. Work the poolees too much, and the Corps loses potential new members; work them too little, and preparedness and discipline might suffer. We doubt that Congress intended judges to dictate this balance,

especially given that judges would only be reviewing claims of error in one direction. See Richard H. Seamon, Causation and the Discretionary Function Exception to the Federal Tort Claims Act, 30 U.C. Davis L. Rev. 691, 703 (1997) (discussing the purpose of the exception and collecting cases).

Hajdusek observes that Marine Corps guidance documents relating to the DEP suggest that the government may be liable for injuries occurring during certain "high-risk" activities, suggesting that these regulations support a finding that the FTCA applies to Marine Corps actions such as those giving rise to this matter. This fact does not save his case, however, for two reasons. First, sovereign immunity waivers such as the FTCA are "strictly construed in favor of the government." Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). Because the decisions involved here -- decisions concerning the day-to-day management of a military training program, albeit one not aimed at active duty troops -- are of the type typically protected by sovereign immunity, we are unable to find a waiver by a mere implication in guidance documents. Second, the relevant guidance seems to pertain to activities that are high-risk by their nature (such as firing weapons or rope climbing), rather than physical exercise rendered dangerous only by its marginal duration and intensity. So even if we were to view the guidance as indicating a waiver of sovereign immunity for claims based on injuries

resulting from certain activities, it is not at all clear that negligent supervision of exercise would be covered by such a waiver.

Hajdusek also invokes Justice Scalia's concurrence in Gaubert for the proposition that whether an allegedly negligent decision occurred at the "operational" level versus the "planning or policy" level is relevant to whether it is shielded by the discretionary function exception. This argument fails, again for two independent reasons. First, Justice Scalia's concurrence was just that: a concurrence. The controlling opinion in Gaubert makes clear that simply because an action takes place at an "operational" level does not mean that it cannot be shielded by the discretionary function exception.[1]  499 U.S. at 326.  Second, even Justice Scalia's preferred analysis does not compel a finding in favor of Hajdusek. Justice Scalia emphasized that in his view, the proper analysis focuses not on whether the government agent's decision could be informed by policy analysis at some level, but whether the agent's job entailed performing that analysis. Thus, "[t]he dock foreman's decision to store bags of fertilizer in a highly compact fashion is not protected by this exception because, even

---

[1] We note that as of today, a petition for certiorari is pending in Evans, urging the Supreme Court to adopt Justice Scalia's concurrence as the new standard for adjudicating the discretionary function exception. See Petition for Writ of Certiorari, Evans v. United States (No. 17-1516).

if he carefully calculated considerations of cost to the Government vs. safety, it was not his responsibility to ponder such things; the Secretary of Agriculture's decision to the same effect _is_ protected, because weighing those considerations is his task." _Id._ at 335-36 (Scalia, J., concurring in part and concurring in the judgment).  Here, Mikelo's task, as the Marine supervising Hajdusek and his fellow poolees, included weighing considerations such as adequate preparation of poolees and attrition avoidance in designing a workout program.  Accordingly, even if we were to view Justice Scalia's concurrence as controlling, the result here would not change.

Threaded throughout Hajdusek's arguments is a concern that if the government prevails, the military will have a license to behave unreasonably in its interactions with individuals who, although military-adjacent, are not active-duty members of the military able to access Department of Defense or Veterans Affairs care when injured.  In Hajdusek's view, a ruling for the government has the practical effect of creating a world where individuals can be injured by negligent military actors and have no recourse, and the military will have no incentive to give due weight to the risk of serious injury.  In the face of this concern, we emphasize that our decision today is, as all FTCA discretionary function exception cases must be, cabined to the record before us.  As the government conceded at oral argument, certain decisions by government actors,

though nominally discretionary, may pass a threshold of objective unreasonableness such that no reasonable observer would see them as susceptible to policy analysis. We do not rule out the possibility that a Marine running a pool program could make some decision falling into this category. For example, if a Marine decided that the only way to toughen up poolees was to have them jump off a twenty-foot high cliff onto concrete, we would have no qualms holding that even though a desire to serve Marine Corps goals of preparing poolees for basic training may have animated the decision, it was simply not a decision that in any objectively reasonable sense could be said to be informed by policy analysis. In that case, the unreasonableness of the activity would be clearly apparent ex ante to any reasonable observer. And such a decision would not constitute a weighing of safety concerns versus intensity concerns; it would amount to a complete rejection of the former in favor of the latter, contrary to guidance from the Marines.

Returning from the hypothetical to the actual, however, we recognize that Hajdusek does not allege anything close to the situation described above. The complaint itself only alleges that Mikelo exercised Hajdusek unreasonably hard. It does not allege facts plausibly supporting an inference that a Marine supervising the activity would have reason to know ex ante that the exercise was sufficiently likely to cause serious injury as to deem it the product of a rejection of a policy goal rather than a balancing of

such goals.  The additional materials submitted by Hajdusek offer little more.  At most, they support a theory that Mikelo's motivation was to discipline Hajdusek.  But even assuming this to be true, the use of arduous physical exercise to discipline an individual for a perceived failing would seem to be an appropriate tool of boot camp preparation, which is a primary goal of the DEP. Latching on to the "punishment" theory, Hajdusek suggests that the Marines in charge of the pool program have no authority to utilize physical discipline on a poolee.  However, nowhere in the guidance documents is physical discipline explicitly prohibited.  The best language Hajdusek can offer is language from the guidance documents instructing that Marines should not "establish a Drill Instructor to recruit relationship" but rather should be "friendly but firm" and "[s]trive for a relationship similar to that of a teacher and a student."  Marines must "make discretionary judgments about how to apply concretely the aspirational goal embedded in th[is] statement."  Shansky, 164 F.3d at 691.

This language simply does not allow the inference of a blanket "no physical discipline" rule.  While the results in this case are disturbing, one can easily imagine more run-of-the-mill acts of physical discipline raising no eyebrows.  If a poolee were late to a physical training session and ordered to run a mile as a penalty, we would not see that order as somehow establishing an impermissible "Drill Instructor" relationship.  Similarly, we

would not find it so out-of-bounds as to go beyond the scope of discretionary judgment. The facts alleged in this case paint a picture of a workout that was unusually intense, perhaps even unreasonably so, but not so objectively beyond the pale that it could not have been informed by policy analysis. Accordingly, though we acknowledge that there may be a line beyond which discretionary decisions lose protection due to their patent unreasonableness, the allegations here fall short of that line.

## III.

Hajdusek's case is a sympathetic one. He attempted to serve his country, was injured in that attempt, and now, due to the quirk of his not-quite-Marine status, the services normally available to injured servicemen and women are unavailable to him. Nonetheless, Congress has decreed that the federal courts cannot use tort claims to second-guess the discretionary choices of federal agents who implement the government's policy choices. In this specific instance, Congress's command means that we cannot second-guess the decision of a Marine about how hard to work out a potential recruit at the end of a training program, at least in the absence of a patent abandonment of any effort to balance Marine Corps policy goals. We therefore affirm the judgment of dismissal.