# United States Court of Appeals
## For the First Circuit

No. 20-1523

A. MICHAEL DAVALLOU,

Plaintiff, Appellant,

v.

UNITED STATES,

Defendant, Appellee,

ANCIENT AND HONORABLE ARTILLERY COMPANY
OF MASSACHUSETTS; EMERY A. MADDOCKS, JR.,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

---

Before

Lynch, Kayatta, and Barron,
Circuit Judges.

---

Scott E. Charnas, with whom Charnas Law Firm, P.C., Thomas R. Murphy, Law Offices of Thomas R. Murphy, LLC, Kevin J. Powers, and Law Offices of Kevin J. Powers were on brief, for appellant.
Thomas E. Kanwit, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

May 25, 2021

**KAYATTA**, **Circuit Judge**. Michael Davallou alleges that he suffered permanent hearing damage when the Massachusetts Army National Guard (MANG) negligently fired military artillery "in close proximity" to him while he walked through Boston Common. He filed suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680. The district court dismissed the suit, finding that the United States was entitled to sovereign immunity pursuant to the FTCA's so-called "discretionary function exception." See id. § 2680(a). For the following reasons, we affirm.[1]

## I.

We recite the facts alleged in Davallou's complaint, taking as true all well-pleaded facts and drawing all reasonable inferences in Davallou's favor. See Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). On June 1, 2015, the Ancient and Honorable Artillery Company of Massachusetts (AHAC), a historic military organization with no present-day military functions, conducted its annual "Change of Command" ceremony, also known as the "June Day" ceremony. AHAC "organized, directed, arranged, supervised and controlled" the ceremony, as it had done

---

[1] Given that we affirm the district court's application of the discretionary function exception, we do not address its alternative conclusion that the FTCA does not apply because a private individual would not be liable for the challenged conduct under like circumstances. See 28 U.S.C. § 2674.

each year since at least 2010.  As part of the annual ceremony, AHAC "arranged for military artillery to be fired within Boston Common [by MANG] . . . in the presence of members of the public." In keeping with this tradition, MANG performed an artillery salute during the June 2015 ceremony, firing blank rounds from howitzers (a type of cannon).  The noise produced by the howitzers caused Davallou, who was walking on Boston Common at the time, to suffer permanent hearing damage.

Davallou filed suit against the United States, alleging that MANG negligently caused his hearing loss by failing to warn him before firing the howitzers and by failing to ensure that he remained at a safe distance from the howitzers.[2]  The government moved to dismiss the suit pursuant to the doctrine of sovereign immunity, arguing that Davallou's negligence claim arose out of MANG members' "performance [of] . . . a discretionary function." 28 U.S.C. § 2680(a).  The district court agreed and dismissed Davallou's suit against the United States for lack of subject-matter jurisdiction.  Davallou appeals.

---

[2]  Davallou also brought negligence claims against AHAC and its Executive Secretary, Emery A. Maddocks, Jr., but later stipulated to their dismissal pursuant to a settlement agreement.

## II.

We review de novo the district court's dismissal for lack of subject-matter jurisdiction. See Shansky v. United States, 164 F.3d 688, 690 (1st Cir. 1999). Federal courts lack subject-matter jurisdiction over claims against the United States absent a waiver of sovereign immunity. See Villanueva v. United States, 662 F.3d 124, 126 (1st Cir. 2011). The FTCA "waives the [federal] government's sovereign immunity for certain torts committed by its employees in the scope of their employment."[3] Mahon v. United States, 742 F.3d 11, 12 (1st Cir. 2014); see also 28 U.S.C. § 1346(b)(1). But that waiver does not extend to claims based upon a government employee's exercise or failure to exercise a "discretionary function." See Mahon, 742 F.3d at 12; 28 U.S.C. § 2680(a). The pivotal question is whether Davallou's claim falls within the scope of this "discretionary function exception." If so, it must be dismissed for lack of subject-matter jurisdiction. See Bolduc v. United States, 402 F.3d 50, 55 (1st Cir. 2005).

To determine whether the discretionary function exception applies, we follow a "familiar analytic framework." Shansky, 164 F.3d at 690. First, we must "identify the conduct that allegedly caused the harm." Id. at 690-91. Here, Davallou focuses on two omissions by MANG: failing to issue a warning

_____

[3] The government concedes that MANG members were acting as federal employees at all times relevant to the complaint.

- 5 -

before firing the howitzers and failing to ensure that bystanders maintained a safe distance from the howitzers. Second, we must ask whether that conduct is both "discretionary," id. at 691, and "susceptible to policy analysis," id. at 692. Because no federal statute, regulation, or policy dictated MANG's safety protocols during the June Day ceremony, the parties agree that the challenged conduct was discretionary. Davallou's claim therefore turns on his contention that MANG's exercise of discretion under the circumstances was not susceptible to policy analysis.

Although we employ a "case-by-case approach" when evaluating whether challenged government conduct is susceptible to policy analysis, id. at 693, several principles guide our inquiry. First, the discretionary function exception is not limited to high-level policymaking or planning functions. Rather, it can apply as well to day-to-day operational decisions. United States v. Gaubert, 499 U.S. 315, 325 (1991). Second, it does not matter whether MANG consciously engaged in any analysis of any policy considerations, see Shansky, 164 F.3d at 692, or whether its decision on how to proceed "was in fact motivated by a policy concern," Hajdusek v. United States, 895 F.3d 146, 150 (1st Cir. 2018). Rather, we ask only whether "some plausible policy justification could have undergirded" MANG's conduct. Shansky, 164 F.3d at 692. Nor does it matter, for purposes of the discretionary function exception, whether MANG's conduct was

ultimately negligent: The exception shields the government from liability for discretionary policy choices "whether or not the discretion involved be abused." Evans v. United States, 876 F.3d 375, 381 (1st Cir. 2017) (quoting 28 U.S.C. § 2680(a)). Finally, because the law presumes that government employees' discretionary decisions do indeed involve policy judgments, Davallou bears the burden of alleging facts that would support a finding that MANG's exercise of discretion in this instance was not susceptible to policy analysis. See Gaubert, 499 U.S. at 324-25 ("For a complaint to survive a motion to dismiss [based on the discretionary function exception], it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.").

Considering all the circumstances alleged, we conclude that Davallou has not met this burden. Deciding how to handle safety considerations at the annual June Day ceremony implicated a number of competing values, including the efficient allocation of resources, the historical and ceremonial functions of the event, the public's ability to view the event, and the value of the event as a military training or recruitment exercise. Cf. Mahon, 742 F.3d at 16 (applying the discretionary function exception to the government's decision not to raise the railing height in a historic building because it actually or potentially involved considerations of efficiency, safety, aesthetics, and cost).

- 7 -

Given that AHAC allegedly "organized, directed, arranged, supervised and controlled" the June Day ceremony for years without any prior report of injury, it is plausible that MANG could have weighed the various policy considerations and favored the lower cost and greater efficiency of relying on AHAC generally when it came to safely managing spectators. Cf. Carroll v. United States, 661 F.3d 87, 104 (1st Cir. 2011) (applying the discretionary function exception where the government ceded responsibility for managing known safety risks to independent contractors); Wood v. United States, 290 F.3d 29, 40 (1st Cir. 2002) (holding that the "delegation of the responsibility for safety issues to the contractor suggests that . . . the [Navy] had determined already that in obtaining the 'best value' for the American taxpayer, worker safety should be a primary concern of the contractor" rather than the Navy).

One can imagine circumstances in which such policy considerations could not plausibly have informed MANG's conduct. Imagine, for example, that unprotected individuals were standing an arm's length away from the howitzers as MANG prepared to fire. With MANG thus on notice that AHAC's safety precautions were failing and that spectators were in imminent danger, the government's proffered policy justifications for firing the howitzers "may be so far-fetched as to defy any plausible nexus between the challenged conduct and the asserted justification."

Shansky, 164 F.3d at 695; accord Hajdusek, 895 F.3d at 152 (predicting that a decision to have Marine Corps recruits "jump off a twenty-foot high cliff onto concrete" during training would not be protected, as such a decision would "amount to a complete rejection" of safety considerations).

Such cases, though, "invariably involve extreme circumstances." Shansky, 164 F.3d at 695. As in Hajdusek, Davallou's complaint alleges no facts "supporting an inference that [the defendant] would have [had] reason to know ex ante that the [challenged conduct] was sufficiently likely to cause serious injury as to deem it the product of a rejection of a policy goal rather than a balancing of such goals." 895 F.3d at 153. Rather, the complaint alleges in conclusory terms that MANG fired artillery in a ceremony organized and controlled by AHAC without first issuing a warning or making a "reasonable effort to keep members of the public including plaintiff a safe distance from said artillery." In similarly vague terms, the complaint further alleges that MANG fired that artillery "in close proximity to civilians," including Davallou, even though "[t]he level of noise and/or sonic waves produced by the firing of said military artillery . . . was sufficient to cause tinnitus, permanent damage to hearing, and other injury to human beings." We do not know from the complaint where in the park the ceremony was held, how close AHAC allowed the public (including Davallou) to get to the

howitzers at the time of the artillery salute, or whether anyone was even aware of Davallou's presence when the howitzers were fired. We also do not know how far from the howitzers the public would have had to stand in order to avoid any substantial risk of hearing loss. Nor is there reason to believe that anyone else had previously suffered injury as a result of AHAC's supervision of the annual June Day ceremony. Without at least some such averments, Davallou has not carried his burden of alleging facts that could support a finding that MANG exhibited such a complete disregard for public safety that its decisions could not have been driven by policy analysis. See Gaubert, 499 U.S. at 324-25.

In arguing to the contrary, Davallou points to a line of cases from the Ninth Circuit holding that a "decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." Sutton v. Earles, 26 F.3d 903, 910 (9th Cir. 1994) (emphasis added); accord, e.g., Green v. United States, 630 F.3d 1245, 1252 (9th Cir. 2011) (finding that the discretionary function exception did not apply to the Forest Service's failure to warn property owners of its decision to light a backfire nearby). But none of the Ninth Circuit cases Davallou relies on dealt with the policy consideration applicable here (the advantages of relying on AHAC as before). And if we were to read

- 10 -

those cases as broadly as Davallou does, they would place outside the discretionary function exception all instances in which the government knowingly creates a risk of injury without issuing a warning, even if the risk is minimal and a particular type of warning would undermine competing policy interests. Such a sweeping approach is contrary to our precedents. We have previously rejected the notion that "when safety becomes an issue, all else must yield." Shansky, 164 F.3d at 693 (explaining that "there is no principled basis for superimposing a generalized 'safety exception' upon the discretionary function defense"). Rather, as we have already explained, a "case-by-case approach is required." Id.; accord Hajdusek, 895 F.3d at 150.

Davallou falls back on the argument that MANG's conduct was "not readily amenable to policy analysis" because it implicated only "technical safety assessments conducted pursuant to prior policy choices." Shansky, 164 F.3d at 694; see also Berkovitz v. United States, 486 U.S. 531, 547 (1988) (concluding that the government's approval of an unsafe vaccine batch was not susceptible to policy analysis because the government had failed to follow already-settled scientific criteria for assessing vaccine safety). In advancing this argument, he relies solely on a training manual prepared by the U.S. Army Public Health Command, entitled "Readiness through Hearing Loss Prevention," which recognizes that firing a 155-millimeter howitzer creates a risk of

hearing loss. But, unlike the vaccine safety standards in Berkovitz, the training manual does not purport to establish concrete safety criteria that account for any risk to public safety or any of the other competing interests that MANG might have considered in this instance. Rather, the manual simply explains how noise can cause hearing loss, how service members using military equipment can protect themselves from noise, and how hearing loss can adversely affect readiness for combat. This sort of general educational information does not remove MANG's conduct in this case from the realm of policy decisions. Cf. Shuman v. United States, 765 F.2d 283, 285-86, 293-94 (1st Cir. 1985) (finding that the Navy's promulgation of advisory safety guidelines for shipyards did not eliminate the Navy's discretion to prioritize production over safety).

### III.

This is a challenging case, and a sad one. Assuming that his allegations are true, Davallou was simply taking a walk through one of our country's most celebrated city parks when, through no fault of his own, he was exposed to noise loud enough to cause permanent hearing damage. Our federal government, however, does not allow itself to be sued for its discretionary decisions, even bad ones, so long as they are reasonably susceptible to policy analysis. And on the facts alleged, additional precautions were not so obviously needed that the

decisions to proceed according to tradition and to leave the management of spectators to AHAC fell outside the realm of possible policy decisions.  We therefore <u>affirm</u> the judgment of the district court.