# United States Court of Appeals

## For the First Circuit

No. 25-1153

UNITED STATES, ex rel. ERIK K. SARGENT,

Plaintiff, Appellant,

UNITED STATES, ex rel.,

Plaintiff,

v.

DOUGLAS A. COLLINS, in his official capacity as Secretary of the
Department of Veterans Affairs,

Defendant, Appellee,

TRACYE B. DAVIS; TODD STAPLEY,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Stacey D. Neumann, U.S. District Judge]

Before

Gelpí, Rikelman, and Dunlap,
Circuit Judges.

Cynthia A. Dill on brief for appellant.

Brett A. Shumate, Assistant Attorney General, Craig M. Wolff,
Acting United States Attorney, and Michael S. Raab, Charles W.
Scarborough, and Maxwell A. Baldi, Attorneys, Appellate Staff,
Civil Division, U.S. Department of Justice, on brief for
appellees.

January 22, 2026

**DUNLAP, Circuit Judge.** Plaintiff-Appellant Erik K. Sargent appeals from the district court's dismissal of his retaliation claim under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), for lack of subject-matter jurisdiction. Mr. Sargent, a federal employee, sued the Secretary of the Department of Veterans Affairs (the "Secretary") in his official capacity.[1] Mr. Sargent alleged that he had suffered on-the-job retaliation at Veterans Affairs Maine Healthcare System after refusing to cooperate with fraudulent acts by his supervisors and reporting those acts. The district court determined, sua sponte, that Congress had not expressly waived federal sovereign immunity for retaliation claims under Section 3730(h), and so "the FCA d[id] not authorize [Mr. Sargent] to pursue his FCA-derived retaliation claim against the United States." United States ex rel. Sargent v. McDonough, No. 1:23-cv-00328-SDN, 2024 WL 5159170, at *2 (D. Me. Dec. 18, 2024). The court thus granted the motion to dismiss. Id. at *4. Upon review, we affirm the district court's judgment and hold that federal sovereign immunity bars Mr. Sargent's retaliation claim under 31 U.S.C. § 3730(h).

---

[1] Mr. Sargent's amended complaint named as a defendant Denis R. McDonough, in his official capacity as the Secretary, but Douglas A. Collins has since assumed the role.

When reviewing a district court's grant of a motion to dismiss, we accept the amended complaint's well-pleaded factual allegations as true. Better Way Ford, LLC v. Ford Motor Co., 142 F.4th 67, 77 (1st Cir. 2025). We also "draw all reasonable inferences in favor of the non-moving party." Id. (quoting Cheng v. Neumann, 51 F.4th 438, 443 (1st Cir. 2022)). "We do not . . . credit legal labels or conclusory statements, but rather focus on the complaint's non-conclusory, non-speculative factual allegations and ask whether they plausibly narrate a claim for relief." Id. (quoting Cheng, 51 F.4th at 443). Applying this familiar standard, we draw the facts summarized below from the amended complaint.

## A. Relevant Facts

Mr. Sargent worked for the Veterans Affairs Maine Healthcare System ("VA Maine"), a local organization of the Veterans Health Administration, which is in turn an agency of the U.S. Department of Veterans Affairs. One of his responsibilities was to approve overtime worked by a family nurse practitioner who performed physical-therapy consults. In August 2021, Mr. Sargent learned that the nurse practitioner had reached her overtime cap for the year and was not eligible for any further overtime unless it was COVID-related -- which the consults were not. Around two months later, Mr. Sargent learned the nurse practitioner had not

been logging on to her computer when she claimed to be performing overtime consults, indicating she had not actually worked overtime.

Knowing these facts, Mr. Sargent's supervisors -- Tracye Davis (the Medical Center Director) and Todd Stapley (the VA Maine Chief of Staff) -- allegedly created and signed a false waiver indicating that the nurse practitioner had worked overtime that was mission essential to COVID, when she had not. This waiver resulted in a payment of approximately $95,000 in unearned overtime compensation, according to Mr. Sargent. Mr. Sargent alleges that he refused to sign the waiver to override the overtime cap and falsely state that the nurse practitioner's overtime claims should be coded as COVID-related. When he subsequently disclosed what he believed was a violation of the law, gross mismanagement of funds and abuse of authority to the VA Office of Inspector General, his employer and supervisors allegedly targeted him with a campaign of harassment and discrimination in retaliation, which included a reprimand and demotion.

## B.  Procedural History

Mr. Sargent brought a qui tam action in the federal district court for the District of Maine. On behalf of the United States, he accused his direct supervisors, Ms. Davis and Mr. Stapley, of submitting a false claim and conspiring to commit

a violation of the FCA, 31 U.S.C. § 3729(a)(1)(A)-(C). On his own behalf, he alleged that unspecified "defendants" -- presumably, Ms. Davis, Mr. Stapley, and the Secretary (in his official capacity) -- had retaliated against him in violation of 31 U.S.C. § 3730(h). The government intervened and moved to dismiss the false claim and conspiracy count against Ms. Davis and Mr. Stapley, and the district court granted that motion to dismiss. United States ex rel. Sargent v. McDonough, No. 1:23-cv-00328-LEW, 2024 WL 809902, at *2 (D. Me. Feb. 26, 2024).[2]

Subsequently, the government moved to dismiss the remaining retaliation count. The government argued that the court lacked subject-matter jurisdiction because Mr. Sargent, as a federal employee, had not availed himself of the exclusive remedies for retaliatory personnel decisions prescribed in the Whistleblower Protection Act ("WPA"), 5 U.S.C. §§ 1214, 1221, 2302(b)(8)-(9), and so could not pursue an FCA-based retaliation claim. United States ex. rel. Sargent v. McDonough, No. 1:23-cv-00328-SDN, Dkt. No. 12 at 4-6 (Mot. Dismiss). On December 18, 2024, the district court dismissed the retaliation

---

[2] Because qui tam actions are brought in the name of the United States, the government "may dismiss the action notwithstanding the objections of" the relator as long as the relator "has been notified by the [g]overnment of the filing of the motion and the court has provided the [relator] with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A).

count, but primarily on a basis different than that briefed by the government.

On its own initiative, the district court determined that because "a judgment against the Secretary [in his official capacity] 'would expend itself on the public treasury or domain,'" Mr. Sargent's suit amounted to "one against the sovereign -- the United States," which "is immune from suit unless it consents to be sued." Sargent, 2024 WL 5159170, at *2 (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)). Given that such consent "must be unequivocally expressed," the district court considered whether Congress had authorized FCA actions against the government via an express waiver of sovereign immunity. Id. at *2-3 (quoting United States v. Testan, 424 U.S. 392, 399 (1976)). It held that there is no such waiver in the FCA, concluding that "the FCA allows a person to file suit on behalf of the federal government -- not against it." Id. at *3 (quoting Nance v. United States, No. 22-cv-03861, 2023 WL 5211606, at *7 (N.D. Ill. Aug. 14, 2023)). After the court granted the government's second motion to dismiss, this appeal followed.

## II.

On appeal, the government argues that the district court lacked jurisdiction under either of two rationales: (1) exclusive channeling -- that is, the government's position that the WPA furnishes Mr. Sargent's exclusive remedies -- and (2) sovereign

- 7 -

immunity. The sovereign immunity inquiry, on which the district court focused, is dispositive, so we do not reach the government's first argument.

As a preliminary matter, we note the district court acted appropriately in assessing sovereign immunity sua sponte. Although federal "courts are generally limited to addressing the claims and arguments advanced by the parties," they nevertheless "have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011). Sovereign immunity is a jurisdictional issue. See United States v. Miller, 604 U.S. 518, 527 (2025)(citing FDIC v. Meyer, 510 U.S. 471, 475 (1994)). Thus, it matters not that the government advanced no sovereign-immunity defense. The district court correctly fulfilled its "obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further" after determining that "such jurisdiction [wa]s wanting." Godin v. Schencks, 629 F.3d 79, 83 (1st Cir. 2010) (quoting In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988)).

## A.   Legal Standards

### 1.   Standard of Review

We have jurisdiction over this appeal under 28 U.S.C. § 1291, and we review the district court's decision to dismiss for lack of subject-matter jurisdiction de novo.  See Davallou v. United States, 998 F.3d 502, 504 (1st Cir. 2021).  Although, as noted above, "we take all well-pleaded allegations as true" and give Mr. Sargent "the benefit of all reasonable inferences," ultimately "the burden of demonstrating the existence of federal jurisdiction . . . lies with [him], as he is the party seeking to invoke federal jurisdiction."  Perales-Muñoz v. United States, 151 F.4th 1, 6 (1st Cir. 2025).

### 2.   The False Claims Act

The FCA, codified at 31 U.S.C. §§ 3729-3733, "imposes civil liability on any person who presents false or fraudulent claims for payment to the Federal Government."  United States ex rel. Polansky v. Exec. Health Res., Inc., 599 U.S. 419, 423 (2023); see also 31 U.S.C. § 3729(a)(1).  Through qui tam actions, private persons -- called "relators" -- may bring civil actions for false claims "in the name of the United States . . . against those who they believe have defrauded the Federal Government."  United States ex rel. Schutte v. SuperValu Inc., 598 U.S. 739, 743 (2023); see also 31 U.S.C. § 3730(b)(1).  Relators in successful false claims actions receive a percentage of any monies recovered by the

United States, plus reasonable attorneys' fees and costs. 31 U.S.C. § 3730(d).

"To encourage the filing of qui tam actions and protect whistle-blowers . . . the FCA imposes liability on employers who retaliate against employees who pursue, investigate, or contribute to an action exposing fraud against the government." Maturi v. McLaughlin Rsch. Corp., 413 F.3d 166, 172 (1st Cir. 2005). Section 3730(h)(1) of the FCA provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). An employee who faces retaliation can seek "reinstatement . . . , [two] times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination." Id. § 3730(h)(2).

### 3. The Whistleblower Protection Act

The FCA is not the only mechanism potentially available to employees who complain of retaliatory conduct. Enacted as an amendment to the Civil Service Reform Act of 1978 ("CSRA"), see generally Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended

in scattered sections of 5 U.S.C.), the WPA protects federal employees from adverse employment actions. The CSRA generally allows civilian employees to appeal major adverse actions to the Merit Systems Protection Board. See 5 U.S.C. §§ 7512, 7513(d), 7701. As part of the remedies available under the CSRA, the WPA allows an employee who has suffered from a "prohibited personnel practice" -- which includes retaliation for disclosing what the employee reasonably believes to be evidence of any violation of law or waste of funds -- to obtain reinstatement, as well as back pay (but not double back pay), consequential damages, and compensatory damages. Id. § 1221(g)(1)(A); see id. § 2302(b)(8); see generally Mount v. Dep't of Homeland Sec., 937 F.3d 37, 41-42 (1st Cir. 2019) (discussing the WPA's relationship to the CSRA and our court's jurisdiction over whistleblower claims). Under the WPA, certain exhaustion requirements must be met prior to bringing suit in federal court. See 5 U.S.C. § 1214(a)(3), (c); see also Mount, 937 F.3d at 44-45. Mr. Sargent did not bring his retaliation claim under the WPA; instead, his claim sounds in the FCA's retaliation provision only.

## B. Sovereign Immunity

### 1. Suit Against the United States

Mr. Sargent's suit is, in effect, a suit against the federal government. Mr. Sargent sues the Secretary in his official capacity, not his personal capacity. Our court has long held that

official-capacity suits are "in all respects other than name, to be treated as . . . suit[s] against the [government] entity," Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)). This is true "even when pondering jurisdictional and quasi-jurisdictional issues." Am. Policyholders Ins. Co. v. Nyacol Prods., Inc., 989 F.2d 1256, 1260 (1st Cir. 1993). Thus, Mr. Sargent's suit is "not a suit against the [Secretary] personally," Kentucky, 473 U.S. at 166, but rather "against the governmental entity which the [Secretary] heads": the Department of Veterans Affairs. Nyacol Prods., 989 F.2d at 1259. And ultimately it is "a suit against the United States," because the "relief sought nominally against" the Secretary -- double back pay, interest, and special damages -- "is in fact against the sovereign." State of Hawaii v. Gordon, 373 U.S. 57, 58 (1963). It would "expend itself on the public treasury." Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005) (quoting Dugan, 372 U.S. at 620).

We observe that Mr. Sargent appeals from the district court's dismissal of his retaliation claim only as to the Secretary, abandoning any retaliation claim against his supervisors. In his amended complaint, Mr. Sargent asserted the retaliation count against unspecified "defendants" -- presumably all three -- and argued that defendants' wrongful acts caused him substantial harm. The district court, however, relied on

- 12 -

persuasive guidance from other circuits to note that the "FCA does not authorize claims against individual supervisors for their role in FCA-related retaliation, so [the Secretary] would be the only viable defendant on the § 3730 claim." Sargent, 2024 WL 5159170, at *1 n.1.

This court has not yet addressed conclusively whether the FCA retaliation provision, in its current form, subjects individual supervisors to suit.[3] But Mr. Sargent does not pursue this issue on appeal, framing his second claim (for retaliation) as "against VA Secretary Denis McDonough," while failing to meaningfully argue that the district court erred by interpreting Section 3730(h) not to reach his individual supervisors.[4] In this

---

[3] Before 2009, Section 3730(h) expressly limited liability to employers, but Congress deleted the word "employer" when it amended the provision in 2009. See Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25. Two of our sister circuits reason that this was "to account for the broadening of the class of FCA plaintiffs to include 'contractors' and 'agents,' not to provide liability for individual, non-employer defendants," and that the provision continues to "create[] a cause of action against only a plaintiff's employer." Howell v. Town of Ball, 827 F.3d 515, 530 (5th Cir. 2016); see also United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp., 915 F.3d 1158, 1167 (8th Cir. 2019). District courts in our circuit have relied on this guidance. See, e.g., United States ex rel. Karvelas v. Tufts Shared Servs., Inc., 433 F. Supp. 3d 174, 180-81 (D. Mass. 2019); Sargent, 2024 WL 5159170, at *1 n.1. Because Mr. Sargent does not clearly reprise his retaliation claim against Ms. Davis or Mr. Stapley on appeal, we need not resolve the issue here.

[4] Mr. Sargent does generally assert that Davis and Stapley are not the types of federal employees against which FCA claims are barred, and that actions against all other government employees

- 13 -

circuit, "[w]e do not decide an argument not presented to us." In re Fin. Oversight & Mgmt. Bd. for P.R., 948 F.3d 457, 476 n.18 (1st Cir. 2020). Accordingly, the Secretary is the only defendant relevant to this appeal, and the suit is solely against the United States.

Herein lies the problem for Mr. Sargent. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," Dolan v. U.S. Postal Serv., 546 U.S. 481, 484 (2006) (quoting Meyer, 510 U.S. at 475), including in the FCA context. See, e.g., Wood ex rel. U.S. v. Am. Inst. in Taiwan, 286 F.3d 526, 528, 530-32, 535 (D.C. Cir. 2002) (holding that a consular-services institute acting as an "agency or instrumentality" of the United States "enjoy[ed] sovereign immunity" from suit under the FCA). The government's sovereign immunity bars Mr. Sargent's suit unless Congress has waived its immunity to FCA-based retaliation claims. As discussed below, it has not.

---

like Davis and Stapley are not barred. But here and elsewhere, Mr. Sargent seems to be discussing his underlying Section 3729(a) claim against Ms. Davis and Mr. Stapley or providing background on the retaliation for which he ultimately blames the Secretary. Because "[i]t is not our task to devise alternative arguments that have not been pressed on appeal," we need not consider whether to disrupt the district court's conclusion that the Secretary was the only viable defendant. In re RJF Int'l Corp. for Exoneration from or Limitation of Liab., 354 F.3d 104, 107 (1st Cir. 2004).

## 2. Express Waiver

Waivers of federal sovereign immunity "must be 'unequivocally expressed' in statutory text." FAA v. Cooper, 566 U.S. 284, 290 (2012) (quoting Lane v. Peña, 518 U.S. 187, 192 (1996)). A waiver "cannot be implied." Franconia Assocs. v. United States, 536 U.S. 129, 141 (2002) (quoting United States v. King, 395 U.S. 1, 4 (1969)). Consequently, Mr. Sargent's claim can only survive if Section 3730, or some other provision, expressly waives the U.S. government's sovereign immunity.[5] Our sister circuits have reached the conclusion that "[t]here is no express waiver of sovereign immunity in the FCA." Shaw v. United States, 213 F.3d 545, 548 (10th Cir. 2000); see also King v. United States, 878 F.3d 1265, 1267 (11th Cir. 2018); Wood, 286 F.3d at 534-35; LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995). We agree.

### i. Section 3730(h)

To start, nothing in the operative provision of the FCA waives the federal government's sovereign immunity. The specific section governing relief from retaliatory actions,

---

[5] Mr. Sargent asserts that the district court had jurisdiction over his claim pursuant to 28 U.S.C. § 1331, a general jurisdictional statute. But this court has previously explained that Section 1331 "do[es] not waive sovereign immunity and therefore cannot be the basis for jurisdiction over a civil action against the federal government." Berman v. United States, 264 F.3d 16, 20 (1st Cir. 2001).

Section 3730(h), simply provides that employees are "entitled to all relief necessary" if they face retaliation "in the terms and conditions of employment because of lawful acts done . . . in furtherance of" an FCA action or to stop FCA violations. 31 U.S.C. § 3730(h)(1). It does not specify that federal employees can obtain such relief, nor does it expressly indicate that employees can sue the federal government.

Mr. Sargent argues that the "any employee" language in Section 3730(h)(1) includes him and, therefore, allows his claim. To be sure, this language does not exclude federal employees and seems, in a vacuum, broad enough to include them. Without more, however, the "any employee" language in Section 3730(h) is too generic to constitute an "unequivocally expressed" waiver of sovereign immunity, which is a "quite stringent" standard that requires construing language "strictly . . . in favor of the sovereign." See In re Rivera Torres, 432 F.3d 20, 23-24 (1st Cir. 2005) (first quoting Dep't of the Army v. Blue Fox, Inc., 525 U.S. 225, 261 (1999); and then quoting Orff v. United States, 545 U.S. 596, 601-602 (2005)). To the extent the "any employee" language introduces an ambiguity, we construe such ambiguities "against waiver." Id. at 24; see Cooper, 566 U.S. at 290 ("Any ambiguities in the statutory language are to be construed in favor of immunity."); see also LeBlanc, 50 F.3d at 1030 (concluding that while the "any employee" language in Section 3730(h) creates "a

- 16 -

substantive right to relief from" an employer, "the mere existence of a right is not enough" to create "by implication" an FCA-specific remedy for federal employees, beyond the remedies provided by the WPA, absent a "waiver of sovereign immunity").

Further, we do not read this language in a vacuum: we read it in the statutory context of the FCA. The Supreme Court has observed that the FCA is designed to "protect the funds and property of the Government," Polansky, 599 U.S. at 424 (quoting Rainwater v. United States, 356 U.S. 590, 592 (1958)) -- not to allow judgments against the federal government that necessarily deplete those resources via suits against federal employers. Though the retaliation provision "encourage[s] the filing of qui tam actions and protect[s] whistle-blowers," Maturi, 413 F.3d at 172, that provision must be read within the broader context of the FCA. See generally West Virginia v. EPA, 597 U.S. 697, 721 (2022) (explaining that construing statutes in context is fundamental); Dolan, 546 U.S. at 486 (explaining that "[i]nterpretation of a word or phrase depends upon reading the whole statutory text," and "considering . . . context"). We fail to see how Mr. Sargent's suit, which seeks double back pay from the government's coffers via the Department of Veterans Affairs, would protect the government's funds. See Polansky, 599 U.S. at 424. On the contrary, it would deplete those funds. In this overall context, it makes the most sense to interpret the FCA anti-retaliation

provision to "prevent companies from discouraging potential relators from coming forward" -- a construct that applies to the private sector. Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 30 (1st Cir. 2012) (emphasis added). Under our interpretation, Section 3730(h) will continue to dissuade private-sector companies from retaliating against relators even as federal employers remain immune from suit under the FCA and federal employees can continue to seek relief under the WPA.

### ii.  Section 3730(e)

We look next to Section 3730(e). That provision expressly states that courts lack jurisdiction over some asserted WPA claims, namely, certain actions brought by military personnel or against members of Congress, members of the judiciary, or senior executive branch officials, as defined by 5 U.S.C. § 13103(f). 31 U.S.C. § 3730(e)(1)-(2). Mr. Sargent argues that, per the expressio unius est exclusio alterius principle of statutory interpretation, we should read Section 3730(e) as barring retaliation claims against only those government employees expressly identified in that subsection while permitting courts to exercise jurisdiction over claims against all other government employees.

We disagree. First, the plain text of Section 3730(e) makes clear that it only relates to courts' jurisdiction over qui tam actions for false claims "brought in the name of the

Government" under Section 3730(b), and not retaliation suits brought under Section 3730(h).  See 31 U.S.C. § 3730(b), (e). Whereas Section 3730(e) does not reference Section 3730(h) or retaliation, it repeatedly tethers its jurisdiction-stripping provisions to Section 3730(b).  Id. § 3730(e)(1) ("No court shall have jurisdiction over an action . . . under subsection (b) of this section against a member of the armed forces . . . .") (emphasis added); see also id. § 3730(e)(2)(A) ("No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official . . . .") (emphasis added). Second, though useful in other contexts, the expressio unius maxim is ill-suited to identifying an express waiver of sovereign immunity.  Were we to apply the maxim as Mr. Sargent invites us to do, we would in effect be inferring that Congress waived sovereign immunity for all government employees it did not identify in Section 3730(e).  This we cannot do.  See Skwira v. United States, 344 F.3d 64, 73 (1st Cir. 2003) ("[A]ny waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" (quoting King, 395 U.S. at 4)).

For these reasons, we decline to adopt Mr. Sargent's interpretation of Section 3730(e)(2)(A).  Instead, like one of our sister circuits, we reject the premise that Section 3730(e)(2)(A)'s "exemption of certain officials from

liability . . . implies that all other government entities are suable" and instead interpret Section 3730(e)(2)(A)'s "explicit but limited immunity for individuals holding specified offices" as being "completely consistent with an assumed immunity for government entities themselves." Galvan v. Fed. Prison Indus., Inc., 199 F.3d 461, 467 (D.C. Cir. 1999).

### iii. Other FCA Provisions

Considering the FCA more broadly, 31 U.S.C. §§ 3729-3733, we see no other basis to find a waiver of sovereign immunity. The first section, Section 3729, describes the types of conduct that can make someone "liable to the United States Government for a civil penalty," and the ways in which damages may be reduced, id. § 3729(a)(1)-(2); no waiver language appears. Id. § 3729. The section relevant to Mr. Sargent's action, Section 3730, assigns responsibility to the Attorney General for investigating violations of Section 3729; empowers private persons to bring civil actions "in the name of the Government"; outlines the process for the government to intervene in and dismiss FCA actions; describes awards for qui tam plaintiffs; expressly strips jurisdiction over false claims suits against certain individuals; states that the government is not liable for relators' expenses in bringing qui tam actions; and describes relief for retaliatory actions. Id. § 3730. Nowhere in Section 3730 has Congress expressly waived sovereign immunity or invited suit against the

government.  And no such language appears in subsequent sections, either, which describe procedure, venue, and civil investigative demands, respectively.  See id. §§ 3731-3733.

Mr. Sargent attempts to overcome the lack of waiver language in the statute by pointing out that nothing in Section 3730 mentions a requirement for federal employees to file their related FCA retaliation claims elsewhere.  But the government need not expressly "mention" its immunity from suit, which exists by default -- it need only expressly waive it, and it has not done so here.  Similarly, Mr. Sargent protests that the FCA does not suggest that federal whistleblowers should get a lesser remedy than double back pay.  But we do not find it relevant that Congress did not expressly discuss federal employers in the FCA, because -- by default -- they cannot be sued.  Instead, what matters is that Congress did not state that federal employers could be sued.  As the government aptly observes, Mr. Sargent gets the clear-statement rule for sovereign immunity precisely backwards.

### iv.  Other Statutes

Contrasting Section 3730's language with that of other statutes that do expressly waive federal sovereign immunity highlights the lack of any express waiver here.  For example, the Public Vessels Act and the Suits in Admiralty Act both include waivers of sovereign immunity.  See Thames Shipyard & Repair Co. v. United States, 350 F.3d 247, 253 (1st Cir. 2003).  They

explicitly state that "[a] civil action . . . may be brought . . . against the United States" for "damages" or "compensation," 46 U.S.C. § 31102(a), and "a civil action in admiralty . . . may be brought against the United States," 46 U.S.C. § 30903(a). Other statutes do likewise. See, e.g., 5 U.S.C. § 702 ("An action in a court of the United States [for wrongful agency action] . . . shall not be dismissed . . . on the ground that it is against the United States . . . ."); 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ."); 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ."). These waivers are specific and unequivocal. By contrast, as discussed, Section 3730 includes no such unmistakable language.

Mr. Sargent mentions several other statutes on which he claims the FCA whistleblower section was based. But he provides no support for this claim, and even if it were true, "[l]egislative history cannot supply a waiver that is not clearly evident from the language of the statute." Cooper, 566 U.S. at 290. Mr. Sargent does not even attempt to analogize to the statutes he cites -- which makes sense, because they contain the sort of

express waivers that the FCA retaliation provision lacks.  See, e.g., 42 U.S.C. § 7604 (expressly allowing citizen suits "against . . . the United States" to enforce the Clean Air Act (emphasis added)); 33 U.S.C. § 1365 (same, for the Clean Water Act).  We see no reason to construe the FCA differently based on these statutes.

### v.   Policy

Finally, we address Mr. Sargent's policy arguments. Mr. Sargent argues that it makes no sense that the FCA would incentivize employees to bring attention to false claims, but that he -- as a federal employee -- would be limited to single back pay under the WPA, rather than the double back pay allowed for others under the FCA itself, as recompense for any retaliatory actions taken against him.  This policy argument does not change our conclusion given the plain text of the FCA.

Ultimately, Mr. Sargent's criticism takes aim at the logic, or illogic, of Congress's drafting.  But that is beyond the purview of this court.  Our role, prescribed by Article III of the Constitution, is to "declare what the law is, not what we think the law should be" or could be, had Congress drafted the FCA differently.  Oklahoma v. Castro-Huerta, 597 U.S. 629, 656 (2022). "Our task in deciding this case . . . is not to fashion the rule we deem desirable but to identify the rule that Congress fashioned."  Green v. Bock Laundry Mach. Co., 490 U.S. 504, 508

(1989).  Mr. Sargent's policy arguments are "better directed to those who make the laws than those charged with following them," as it is Congress who provided different remedies and opted not to waive sovereign immunity under the FCA.  <u>Ysleta Del Sur Pueblo</u> v. <u>Texas</u>, 596 U.S. 685, 706 (2022).  While we "appreciate [Mr. Sargent's] concerns," ultimately, "they do not persuade us," because it "is not our place to question whether Congress adopted the wisest or most workable policy, only to discern and apply the policy it did adopt."  <u>Id.</u>[6]

### III.

For all these reasons, we hold that Congress has not expressly waived the federal government's sovereign immunity to permit retaliation suits against federal employers under Section 3730(h) of the FCA.  We **<u>affirm</u>** the district court's judgment dismissing the action for lack of subject-matter jurisdiction.

---

[6] Finally, we note that Mr. Sargent seems to suggest that the district court should exercise supplemental jurisdiction over his retaliation claim because it is tied to an FCA claim against Davis and Stapley in their individual capacities.  This claim, however, has already been dismissed.  <u>Sargent</u>, 2024 WL 809902, at *2. Moreover, the supplemental jurisdiction statute, 28 U.S.C. § 1367, does not waive sovereign immunity and therefore would not change our analysis in any event.  <u>See</u> <u>Wilkerson</u> v. <u>United States</u>, 67 F.3d 112, 119 n.13 (5th Cir. 1995) ("Section 1367(a) . . . does not operate as a waiver of the United States sovereign immunity.").